UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LYNNE WOODISON LYMAN,

      Plaintiff,

v.                                                     Case No. 09-14502

Paul D. Borman
United States District Judge

GREATER BOSTON RADIO, INC.,
a/k/a Greater Media, a/k/a Greater Media
Detroit, a foreign corporation.

_____/

### OPINION AND ORDER GRANTING DEFENDANT'S MOTION TO STAY PROCEEDINGS AND TO COMPEL ARBITRATION

This matter is before the Court on Defendant's Motion to Dismiss Plaintiff's Complaint or, in the Alternative, to Stay the Action and Compel Arbitration. (Dkt. No. 9.) Plaintiff has filed a response (Dkt. No. 11) and Defendant has filed a reply (Dkt. No. 12). The Court heard oral argument on June 16, 2010. For the reasons that follow, the Court GRANTS Defendant's motion to stay proceedings and compel arbitration.

**INTRODUCTION**

Defendant moves to dismiss Plaintiff's Complaint, or alternatively for a stay of proceedings and an order compelling Plaintiff to arbitrate her claims. Defendant claims that the parties executed an Employment Agreement that contains a mandatory arbitration provision which requires Plaintiff to arbitrate each of the claims asserted in her Complaint. Plaintiff does not dispute that the parties, at one time, had an Employment Agreement that contained a mandatory arbitration provision, nor

1

does she dispute that the claims asserted in her Complaint would be arbitrable.[1] Plaintiff claims, however, that the Employment Agreement expired by its terms on February 29, 2008 and that Defendant failed to renew the agreement. Plaintiff continued in an employment relationship with Defendant after February 29, 2008, through her termination which was effective February 28, 2009, although Plaintiff's services were not required after November 11, 2008. Thus, Plaintiff claims, there was no contract in effect at the time of her termination that required arbitration of her claims.

## I.     BACKGROUND

### A.     Plaintiff's Claims of Gender and Sex Discrimination

Plaintiff Lynne Woodison Lyman is a Detroit radio show host who was first hired by Defendant Greater Boston Radio, Inc. in March, 1997 as a full-time newsreader. (Compl. ¶ 10.) Plaintiff maintained the position of newsreader until 2000, when she became a co-host of the "JJ and Lynne - The Classic Rock Morning Show" on 94.7 WCSX in Detroit. (Compl. ¶ 11.)

Plaintiff claims that her co-host, James Johnson, was disciplined for grabbing a female employee in or about 2003. (Compl. ¶ 15.) Plaintiff claims that her salary remained less than her co-host through 2008 and claims that in 2006 she discovered that Defendant had been paying her partner a yearly bonus of approximately $24,000.00 which was not offered to Plaintiff. (Compl. ¶¶ 15-18.) Plaintiff claims that she complained about this bonus disparity in or about 2006, but nothing was done. (Compl. ¶19.) Plaintiff claims that her co-host harassed her with derogatory and sexual references while they were broadcasting and requested sexual favors from her in front of other co-

---

[1] Plaintiff has not challenged Defendant's assertions that the parties agreed to arbitrate the type of claims at issue, that arbitration of such claims is not prohibited by statute, and that the arbitration agreement does not waive substantive rights and remedies and is procedurally fair. *See* Def.'s Br. 5-6, 9-11. Plaintiff never claims that her dispute with Defendant arose outside of the employment relationship.

workers and that she complained to her manager in or about April 2007 about this behavior and requested a meeting. (Compl. ¶¶ 21-25.) Plaintiff claims that the meeting did not take place until nine months later, about January, 2008. (Compl. ¶ 26.)

Finally, Plaintiff claims that in or about January 2009, station representative John Gallagher gave an interview to Crain's Detroit publication, falsely stating that the "JJ and Lynne Show" was in 11th or 12th place. (Compl. ¶ 28.) Ultimately, Plaintiff claims, she and her co-host "were replaced by younger, under-performing male radio personalities whose radio format was sexist and discriminatory to women." (Compl. ¶ 29.)

### B.   Plaintiff's Employment Agreement and Termination by Defendant

On May 9, 2003, Plaintiff and Defendant executed a four-year employment agreement under which Plaintiff was to serve as an on-air radio announcer for radio station WCSX-FM. (Def.'s Mot. Ex. C.) The May 9, 2003 employment agreement contained a mandatory arbitration agreement covering "all disputes or conflicts of every kind or nature arising out of or in connection with [her] employment or termination of employment." (*Id*. p. 3 ¶ 5.)

On May 3, 2007, Plaintiff and Defendant executed a one-year employment agreement, under which Plaintiff was to continue to serve as an on-air radio announcer for radio station WCSX-FM. (the "Employment Agreement") (Def.'s Mot. Ex. A.) The May 3, 2007 Employment Agreement contained a mandatory arbitration provision which provided:

> All disputes or conflicts of every kind or nature arising out of or in connection with this Agreement or relating to your employment or termination of employment shall, upon written request of either party, be submitted to and resolved by final and binding arbitration by a single arbitrator in Detroit, Michigan in accordance with the rules of the American Arbitration Association. Judgment on any award of the arbitrator may be entered in any court having jurisdiction.

(Def.'s Mot. Ex. A, p. 5 ¶ 6.) The Employment Agreement began on March 1, 2007 and ended on

3

February 29, 2008. (*Id.* p. 2 ¶ 3.)

Plaintiff's employment, however, did not terminate on February 29, 2008. Under the terms of the Employment Agreement, Defendant had a right to renew the Agreement for another year by giving Plaintiff notice in writing at least 30 days before the expiration of the current term. (*Id.* p. 2 ¶ 5.) Defendant concedes that it has been unable to locate a written notice of renewal, but states that the parties clearly continued the Employment Agreement under the terms of the renewal option that provided Plaintiff with additional benefits. Defendant states, and Plaintiff does not dispute, that after February 29, 2008, Plaintiff's wages did in fact increase to $5,200.00 per week as the parties agreed in the Employment Agreement would occur if the Company exercised the renewal option. (*Id.* p. 2 ¶ 6.)

On November 11, 2008, Defendant gave written notice to Plaintiff of its intent to terminate the employment relationship, specifically referencing the renewed Employment Agreement and expressly referring to the expiration date of February 28, 2009, the date on which the Employment Agreement would expire under the terms of a renewal. The written memo to Plaintiff stated in pertinent part:

> Your *employment agreement* with WCSX, dated April 13, 2007, *expires on February 28, 2009*. Due to upcoming programming changes on WCSX, your services on WCSX will not be required after November 11, 2008.
>
> Although your services will terminate on that date, *your employment agreement will remain in effect through its expiration in February*. In accordance with the *terms of the agreement*, you will continue to receive (1) your base compensation in the gross amount of $5,200.00 per week through February 28, 2009, (2) any ratings bonus earned for the Fall book (which will be prorated and paid out within 30 days after the release of the book) and (3) any bonus earned in connection with your sales efforts and their Results Program (which will be prorated for the fourth quarter based on your services termination date).

Def.'s Mot. Ex. B (emphasis added).

Defendant states, and Plaintiff does not contest the assertion, that Plaintiff never objected to the terms of this letter, never protested that she was not in fact employed under a renewal of the 2007 Employment Agreement, accepted her increased $5,200/month salary, and continued to accept wages and bonuses for three months after her last day of work: from November 11, 2008 to February 28, 2009.

## II.  STANDARD OF REVIEW

Defendant moves the Court to dismiss Plaintiff's Complaint, either pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim on which relief can be granted or under Federal Rule of Civil Procedure 56(c) for summary judgment, or as an alternative to dismissal to stay proceedings and compel Plaintiff to arbitrate her claims, based upon the arbitration agreement contained in Plaintiff's Employment Agreement.  Although courts have applied differing standards of review when considering a motion to dismiss or stay based upon the existence of a valid arbitration agreement, most courts have applied a summary judgment standard.  *See Par-Knit Mills, Inc. v. Stockbridge Fabrics Co.*, 636 F.2d 51, 54 n. 9 (3d Cir. 1980) (applying summary judgment standard in deciding issue of whether or not there was an agreement to arbitrate); *Bensadoun v. Jobe-Riat*, 316 F.3d 171, 175 (2d Cir. 2003) (holding that in the context of motions to compel arbitration, court applies a summary judgment standard); *Molina v. Coca-Cola Ent., Inc.,* No. 08-cv-6370, 2009 WL 1606433 at * 5 (W.D.N.Y. June 8, 2009) (summary judgment is the appropriate standard for a court to apply when determining arbitrability); *Boulet v. Bangor Securities Inc.,* 324 F. Supp. 2d 120, 123 (D. Maine 2004) (treating a motion dismiss or compel arbitration pursuant to Federal Rule of Civil Procedure 12(b) as a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56(c) where court looked beyond the pleadings to decide the motion).  The Court

will review Defendant's motion to compel arbitration as one for summary judgment under Rule 56(c).

Pursuant to Federal Rule of Civil Procedure 56, a party against whom a claim, counterclaim, or cross-claim is asserted may "at any time, move with or without supporting affidavits, for a summary judgment in the party's favor as to all or any part thereof." Fed. R. Civ. P. 56(b). Summary judgment is appropriate where the moving party demonstrates that there is no genuine issue of material fact as to the existence of an essential element of the nonmoving party's case on which the nonmoving party would bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "Of course, [the moving party] always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Id*. at 323; *See also Gutierrez v. Lynch*, 826 F.2d 1534, 1536 (6th Cir. 1987).

A fact is "material" for purposes of a motion for summary judgment where proof of that fact "would have [the] effect of establishing or refuting one of the essential elements of a cause of action or defense asserted by the parties. *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984) (quoting Black's Law Dictionary 881 (6th ed. 1979)) (citations omitted). A dispute over a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). Conversely, where a reasonable jury could not find for the nonmoving party, there is no genuine issue of material fact for trial. *Feliciano v. City of Cleveland*, 988 F.2d 649, 654 (6th Cir. 1993). In making this evaluation, the court must examine the evidence and draw all reasonable inferences in favor of the

6

non-moving party. *Bender v. Southland Corp.*, 749 F.2d 1205, 1210-11 (6th Cir. 1984).

If this burden is met by the moving party, the non-moving party's failure to make a showing that is "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," will mandate the entry of summary judgment. *Celotex*, 477 U.S. at 322-23. The non-moving party may not rest upon the mere allegations or denials of his pleadings, but the response, by affidavits or as otherwise provided in Rule 56, must set forth specific facts which demonstrate that there is a genuine issue for trial. Fed. R. Civ. P. 56(e). The rule requires the non-moving party to introduce "evidence of evidentiary quality" demonstrating the existence of a material fact. *Bailey v. Floyd County Bd. of Educ.*, 106 F.3d 135, 145 (6th Cir. 1997); *see Anderson*, 477 U.S. at 252 (holding that the non-moving party must produce more than a scintilla of evidence to survive summary judgment).

### III.  ANALYSIS

#### A.  The Federal Arbitration Act

The Federal Arbitration Act ("FAA") provides that arbitration clauses in commercial contracts "shall be valid, irrevocable, and enforceable, save upon such grounds as exits at law or in equity for the revocation of any contract." 9 U.S.C. § 2. An action which is found to be arbitrable must be stayed until arbitration is complete. 9 U.S.C. § 3. Alternatively, a district court may dismiss an action where all of the claims are arbitrable. *Green v. Ameritech Corp.*, 200 F.3d 967, 973 (6th Cir. 2000) ("The weight of authority clearly supports dismissal of the case when all of the issues raised in the district court must be submitted to arbitration.")

In considering a motion to dismiss or to stay proceedings and compel arbitration, a court must make several preliminary determinations:

7

> When considering a motion to stay proceedings and compel arbitration under the Act, a court has four tasks: first, it must determine whether the parties agreed to arbitrate; second, it must determine the scope of that agreement; third, if federal statutory claims are asserted, it must consider whether Congress intended those claims to be nonarbitrable; and fourth, if the court concludes that some, but not all, of the claims in the action are subject to arbitration, it must determine whether to stay the remainder of the proceedings pending arbitration.

*Fazio v. Lehman Bros.*, 340 F.3d 386, 392 (6th Cir. 2000) (quoting *Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000)).

### B. The Parties' Agreement to Arbitrate Disputes Relating to Plaintiff's Employment and Termination

In response to Defendant's motion, Plaintiff challenges only the threshold question of whether the parties agreed to arbitrate the present dispute. Plaintiff does not dispute Defendant's assertion that the claims stated in the Complaint are arbitrable or that they arise out of her employment relationship with Defendant and therefore would have been within the scope of the arbitration agreement contained in her 2007 Employment Agreement. Plaintiff claims only that there was no valid contract to arbitrate because Defendant failed to renew the 2007 Employment Agreement that contained the mandatory arbitration provision, which Plaintiff asserts expired by its terms on February 29, 2008. Therefore, Plaintiff argues, her claims are not subject to arbitration.

"[T]he first task of a court asked to compel arbitration of a dispute is to determine whether the parties agreed to arbitrate that dispute." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985). The questions of whether parties are contractually bound to arbitrate and the scope of the issues that may be arbitrated are issues to be decided by the courts. *Litton Financial Printing Division, A Division of Litton Business Systems, Inc. v. National Labor Relations Bd.*, 501 U.S. 190, 208 (1991). "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract

language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone Memorial Hosp. v. Mercury Construction Corp.*, 460 U.S. 1, 24 (1983). "[A]s with any other contract, the parties' intentions control, but those intentions are generously construed as to issues of arbitrability." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985). "Unless is may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute," arbitration must be compelled. *AT&T Technologies, Inc. v. Comms. Workers*, 475 U.S. 643, 650 (1986).

### 1. The parties agreement to arbitrate survived any claimed expiration of the Employment Agreement.

The Supreme Court has held that an arbitration provision in a contract is presumed to survive the expiration of the agreement unless there is some express or implied evidence that the parties intend to negate this presumption. *Nolde Bros., Inc. v. Local No. 358, Bakery & Confectionery Workers Union*, 430 U.S. 243 (1977). "[I]n the absence of some contrary indication, there are strong reasons to conclude that the parties did not intend their arbitration duties to terminate automatically with the contract." *Id*. at 253. "If the duty to arbitrate automatically terminated upon expiration of the contract, a party could avoid his contractual duty to arbitrate by simply waiting until the day after the contract expired to bring an action regarding a dispute that arose while the contract was in effect." *Zucker v. After Six, Inc.*, 174 F. App'x 944, 947-948 (6th Cir. 2006).

In *Litton Financial, supra*, the Supreme Court reiterated the viability of an arbitration provision post-expiration, "presum[ing] as a matter of contract interpretation that the parties did not intend a pivotal dispute resolution provision to terminate for all purposes upon expiration of the agreement." 501 U.S. at 208. The Supreme Court further explained and somewhat limited that holding in *Nolde Brothers, supra*: "A post-expiration grievance can be said to arise under the

9

contract only where it involves facts and occurrences that arose before expiration, where an action taken after expiration infringes a right that accrued or vested under the agreement, or where, under normal principles of contract interpretation, the disputed contractual right survives expiration of the remainder of the agreement." 501 U.S. at 205-206.

Both *Nolde Brothers* and *Litton* have been cited numerous times by courts for the proposition that an arbitration agreement generally lives on, even when the agreement containing it expires, so that disputes arising out of that agreement remain arbitrable. *See Bishop v. Gosiger, Inc.*, __ F. Supp. 2d __, 2010 WL 809847 at * 11 (E.D. Mich. March 4, 2010) (relying on *Nolde Brothers* and *Litton* and granting defendant's motion to stay pending arbitration of disputes arising under a terminated contract where the arbitration provision in the agreement was broad, the claims arguably arose under that agreement and there was no indication that the parties intended the arbitration provision to terminate with the contract); *Summit Training Source Inc. v. Mastery Technologies, Inc.*, No. 00-cv-127, 2000 WL 35442327 at * 6-8 (W.D. Mich. June 1, 2000) (recognizing that even after a contract has expired, an arbitration provision will apply to subsequent disputes concerning events that occurred while the contract was still in effect, and relying on *Nolde Brothers* and *Litton* to hold that the parties intended for the duty to arbitrate to include post-termination disputes); *Abbot Laboratories v. Qiagen Gaithersburg, Inc.*, No. 10-cv-712, 2010 WL 1539952 at * 2 (N.D. Ill. April 15, 2010) (citing *Litton* and holding that "arbitration provisions survive the termination or expiration of the agreement in which they are found unless the agreement expressly provides otherwise."); *In re Rarities Grp., Inc.*, No. 08-11987, 2010 WL 1342916 at * 5 (D. Mass. March 31, 2010) (citing *Nolde Brothers* and *Litton* and finding that arbitration agreement contained in an expired contract "lived on" where the parties had included arbitration provisions in multiple agreements over the

course of their relationship, evidencing the "intention to resolve disputes arising out of their relationship by resort to arbitration [which was] unmistakably demonstrated by their consistent course of dealing in that respect."); *Riley Mfg Co., Inc. v. Anchor Glass Container Corp.*, 157 F.3d 775, 781 (10th Cir. 1998) (relying on *Nolde Brothers* and *Litton* and holding that a dispute "arises under" a prior contract for purposes of survival of an arbitration provision where the dispute relates to events which have occurred at least in part while the agreement was still in effect); *Acquaire v. Canada Dry Bottling*, 906 F. Supp. 819, 832 (E.D.N.Y. 1995) ("[E]ven after a contract has expired, an arbitration provision contained therein will generally be held to apply to subsequent disputes concerning events that occurred while the contract was still in effect.")[2]

Every event mentioned in Plaintiff's Complaint, with the exception of the last allegation in paragraph 28 regarding a 2009 allegedly false statement relating to the ratings of the "JJ and Lynne Show," is alleged to have occurred before February 29, 2008, the date on which Plaintiff claims the Employment Agreement expired by its terms. The Complaint alleges that Plaintiff's "salary remained substantially less than her co-hosts through 2008" and that she "objected to this pay disparity at that time." (Compl. ¶¶ 16-17.) Plaintiff claims that "[i]n 2006 [she] discovered that Defendant's management had been paying her partner a yearly Management Development Bonus of approximately $24,000 which was not offered to [her]." (Compl. ¶ 18.) Plaintiff alleges that she complained "about the bonus disparity verbally to Defendant's management in or about 2006, but

---

[2] Although counsel for Plaintiff argued at the hearing that *Litton* and *Nolde Brothers* are distinguishable because both cases involved collective bargaining agreements, the significance of such a distinction was soundly rejected by the Sixth Circuit in a case which Plaintiff actually brought to the Court's attention the day before the hearing on this matter. In *Zucker, supra,* 174 F. App'x at 947, the court held: "Although *Litton, Nolde Bros.,* and *South Central* all involved collective bargaining agreements, their holdings are based upon principles applicable to arbitration agreements generally, and their application need not be limited to the collective bargaining context."

11

still nothing was done." (Compl. ¶ 19.) Plaintiff alleges that "[i]n or about 2007, Plaintiff was cornered by her supervisor while she was alone in her office and shown an article about waxing pubic hair and different ways to 'decorate.'" (Compl. ¶ 24.) Plaintiff further alleges that "[i]n or about April 2007, Plaintiff complained of the pay disparity and the harassment in writing" to management and that a meeting to address the issue was not held until nine months later [a date still within the un-expired contract period]. (Compl. ¶¶ 25-26.) Thus, with the exception of one allegation, all of the conduct complained of in Plaintiff's Complaint relates to events which occurred while the original Employment Agreement (or its predecessor agreement which contained the same arbitration clause) was still in effect. Thus, Plaintiff cannot dispute that her claim relates at least in part, if not substantially, to events that occurred during the time that Plaintiff concedes that the May 3, 2007 Employment Agreement was still in effect.[3]

The Court notes that the arbitration provision in the instant matter was very broad, expressly covering "[a]ll disputes or conflicts of every kind or nature arising out of or in connection with this Agreement or relating to your employment or termination of employment." There is no evidence that the parties expressly indicated that the arbitration agreement would not survive the possibility of Plaintiff's termination. Indeed, the November 11, 2008 memo to Plaintiff terminating her

---

[3] The day before the hearing on Defendant's motion, in addition to *Zucker*, Plaintiff submitted to the Court and opposing counsel, as support for her position, the Sixth Circuit opinion in *South Central Power Co. v. Int'l Brotherhood of Electrical Workers, Local Union 2359*, 186 F.3d 733 (6th Cir. 1999). In *South Central*, the Sixth Circuit discussed the application of the *Nolde Brothers* and *Litton* holdings in a case in which some, but not all, of the facts arose prior to the expiration of the agreement to arbitrate. The court concluded that: "[A] dispute 'arises under the contract' when a *majority* of the *material* facts and occurrences arose before the expiration of the [contract]." *Id*. at 740 (emphasis in original). This Court finds that *South Central* supports a finding of arbitrability in the instant case. Plaintiff's Complaint clearly establishes that a significant portion of the factual allegations that form the basis of Plaintiff's claims occurred before March 1, 2009.

employment expressly indicated her "employment agreement with WCSX, dated April 13, 2007, expires on February 28, 2009." Plaintiff never objected to this express reference to the fact that the original April 13, 2007 Employment Agreement had been renewed and was to expire on February 28, 2009. In fact, as discussed in section IIIB2 *infra*, Plaintiff continued to accept the increased benefits of the renewed agreement as explained in the November 11, 2008 termination memorandum. There is simply no evidence that either party expressed an intention at any time not to be bound by the arbitration agreement contained in the Employment Agreement.

Finally, by their course of conduct over several years, both parties affirmed their choice to settle disputes through arbitration. These parties had a long-expressed intention to arbitrate any disputes that arose from Plaintiff's employment, beginning with the arbitration provision in Plaintiff's prior four-year agreement, which mirrored the arbitration provision in the May 3, 2007 Employment Agreement, covering "all disputes or conflicts of every kind or nature arising out of or in connection with this Agreement or relating to your employment or termination of employment . . . ." (Def.'s Mot. Ex. C.)  "The parties' intention to resolve disputes arising out their relationship by resort to arbitration is unmistakably demonstrated by their consistent course of dealing in that respect." *In re Rarities Grp.*, 2010 WL 1342916 at *5.

Plaintiff relies on *Heurtebise v. Reliable Business Computers, Inc.*, 452 Mich. 405 (1996) for the proposition that where no contract exists, no enforceable arbitration agreement exists. *Heurtebise*, however, is clearly distinguishable. Plaintiff in *Heurtebise* had received an employee handbook that included a provision explaining that all disputes involving money damages would go to final and binding arbitration. 452 Mich. at 409. Plaintiff had signed an acknowledgment that she had read and understood the handbook and agreed to be bound by its terms and defendant attempted

13

to use this acknowledgment to compel plaintiff to arbitrate. *Id*. at 408-409. The handbook also contained the following provision: "the Policies specified [in this handbook] do not create any employment or personal contract, express or implied . . ." *Id*. at 413. The court held that this language in the handbook demonstrated that defendant never intended to be bound by any provision contained in the handbook and that therefore the handbook did not create an enforceable arbitration agreement. *Id.* at 414. There is no question in the instant case that both Plaintiff and Defendant intended to be bound by the arbitration clause contained in the original Employment Agreement (as well as in the prior four-year employment agreement) and had knowingly operated pursuant to such an agreement for at least the 5 years prior to Plaintiff's termination. There is also no question that neither party ever expressed an intent to no longer be bound by the arbitration provision.[4]

Despite the fact that for several years Plaintiff's employment relationship with Defendant admittedly was governed by a mandatory arbitration provision and that the parties' course of conduct throughout the relationship evidenced an intent to submit disputes to binding arbitration,

---

[4] Plaintiff also relies on two cases from non-Michigan state courts, neither of which is particularly persuasive to this Court, but which in any event the Court finds distinguishable. In *Donnkenny Apparel, Inc. v. Lee*, 291 A.D.2d 224 (N.Y.S.Ct. App. 2d Div. 2002), the court held, in a two-paragraph opinion and without citation to any controlling authority, that an arbitration agreement contained in an expired contract did not extend post-expiration where any renewal of the agreement was expressly required by the original agreement to be in writing. *Donnkenny* was subsequently distinguished by the Second Circuit in *George v. LeBeau*, 455 F.3d 92 (2d Cir. 2006), a case very similar to the instant case, where the court concluded that the arbitration provision of the original contract, despite expiration of that contract, renewed each year as did the employment contract and upheld the district court's order compelling arbitration. *Id*.

Plaintiff also relies on *Silverman Wender et al. v. Dennis*, 937 So.2d 1221 (Fl. Dist. Ct. App. 2006), also a two-paragraph opinion, in which the party seeking to enforce the arbitration agreement had sent the employee a letter confirming that the original contract had expired and that the employee's employment was being continued at-will. *Id*. at 1221. Unlike *Silverman*, Defendant never indicated to Plaintiff that her original Employment Agreement was not being renewed (in fact just the opposite) and there is no indication that Plaintiff's employment status had changed in any way from the prior years, except for the approved increased pay benefits.

Plaintiff seeks to avoid operation of that provision on the basis of an alleged non-renewal in the final year of her employment. The claims in Plaintiff's Complaint clearly revolve around her term of employment with Defendant, and her claims as pled relate in substantial part to the period of time during which Plaintiff concedes she was subject to binding arbitration.

This Court cannot say with "positive assurance" that the arbitration provision is not susceptible of an interpretation that it covers the instant dispute. *AT&T, supra.* Plaintiff has not come forward with any evidence in response to Defendant's motion which indicates to this Court that the strong presumption in favor of arbitrability should be disregarded in this case. "[T]here is a general presumption of arbitrability, and any doubts are to be resolved in favor of arbitration 'unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'" *Masco Corp. v. Zurich Am. Ins. Co.*, 382 F.3d 624, 627 (6th Cir. 2004) (citing *Highlands Wellmont Health Network, Inc. v. John Deere Health Plan, Inc.*, 350 F.3d 568, 576-77 (6th Cir.2003) (quoting *AT & T Techs., Inc. v. Communications Workers of Am.*, 475 U.S. 643, 650(1986)). Thus, even assuming, which Defendant disputes, that the contract did expire by its terms on February 29, 2008, Plaintiff's claims in the instant dispute arose under the un-expired Employment Agreement and the parties never expressed an intention not to be bound by the arbitration provision contained in that agreement. The Court concludes that, under the principles set forth in *Nolde Brothers* and *Litton*, the arbitration provision contained in the May 3, 2007 Employment Agreement survived any claimed expiration of the contract and requires arbitration of the instant dispute.

**2.     The April 3, 2007 Employment Agreement was renewed and never expired.**

The Court is also persuaded by Defendant's argument that in fact the parties, by their

conduct, did renew the April 3, 2007 Employment Agreement, which therefore never expired. As evidence of this fact, Defendant states that Plaintiff's salary was increased in the second year to $5,200.00 per week, as expressly provided in the renewal provision of the Employment Agreement: "As compensation for your services, we will pay you at the rate of $5,000 per week during the first year of the term, and at the rate of $5,200 per week if the Company exercises its renewal option." (Def.'s Mot. Ex. A, p. 2 ¶ 6.) Plaintiff has never disputed Defendant's contention that her compensation was increased in a manner consistent with the express terms of the renewal option. Nor has Plaintiff contested the fact that she accepted this increase in salary and never objected to the language of her notice of termination, which expressly stated that the April 13, 2007 Employment Agreement expired on February 28, 2009. (Def.'s Mot. Ex. B.)

Plaintiff accepted the benefits of the renewed contract and cannot be heard now to complain that she is not bound by the provisions of the very contract under which she accepted salary and bonuses as guaranteed by that agreement. *See Timko v. Oakwood Custom Coating, Inc.*, 244 Mich. App. 234, 244 (2001) (finding that "defendant clearly provided plaintiff consideration to support enforcement of the terms of the application, specifically employment and wages."). Plaintiff never denied the existence of the renewed Employment Agreement and she accepted its benefits. She cannot now selectively disclaim certain of its terms. The Court therefore finds, alternatively, that the original Employment Agreement was in fact renewed, never expired and requires arbitration of the claims in Plaintiff's Complaint.

**IV.   CONCLUSION**

For the foregoing reasons, the Court GRANTS Defendant's motion to stay proceedings (Dkt. No. 9), and directs the parties to participate in binding arbitration of their dispute. Further

proceedings in this action are STAYED pending the outcome of arbitration.

IT IS SO ORDERED.

                              S/Paul D. Borman
                              PAUL D. BORMAN
                              UNITED STATES DISTRICT JUDGE

Dated: June 21, 2010

## CERTIFICATE OF SERVICE

Copies of this Order were served on the attorneys of record by electronic means or U.S. Mail on June 21, 2010.

                              S/Denise Goodine
                              Case Manager